UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
IN RE:

    JORGE QUINTANA, SR.,                      CASE NO. 08-61884

                          Debtor(s)                      Chapter 13
---------------------------------------------------------
APPEARANCES:

MAXSEN D. CHAMPION, ESQ.
*Staff Attorney for Chapter 13 Trustee*
250 S. Clinton Street, Suite 203
Syracuse, New York 13202

JORGE QUINTANA, SR.
*Pro Se*
23 Railroad Avenue
Stamford, New York 12167

HISCOCK & BARCLAY, LLP                      SUSAN R. KATZOFF, ESQ.
*Attorneys for American General Home Equity, Inc.*    *Of Counsel*
One Park Place
300 South State Street
Syracuse, New York 13202

Hon. Diane Davis, U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

       The Court has before it several matters in the case of Jorge L. Quintana, Sr. ("Debtor"), which were argued at the Court's regular motion calendar in Binghamton, New York, on August 6, 2009. Included among those matters was the "Motion for Clarification of the Alleged Memorandum-Decision, Findings of Fact, Conclusions of Law and Order dated June 19, 2009 . . ." ("June 2009 Decision"),[1] filed on June 26, 2009, by the Debtor (Dkt. No. 86). Also scheduled to be

---

     [1] In its June 2009 Decision, the Court concluded that American General held a valid lien on the Premises based not on a mortgage, which had been extinguished as a result of a tax sale in 2002

2

heard that date were the Debtor's objections (Dkt. Nos. 62 and 70) to the proof of claim (Claim No. 6) filed on behalf of American General Home Equity, Inc. ("American General"), as well as confirmation of the Debtor's plan, as amended and filed on December 1, 2008 ("Plan") (Dkt. No. 19). American General filed opposition to the Debtor's motion for clarification (Dkt. No. 90), as well as to Debtor's objections to its proof of claim (Dkt. Nos. 66, 80 and 83). It also had filed an objection to the Debtor's Plan on January 30, 2009 (Dkt. No. 42).[2]

Debtor's motion seeking clarification of the Court's June 2009 Decision was interpreted by the Court to be one seeking reconsideration. The Court denied the Debtor's motion on August 6,

---

at which the Debtor and his wife had repurchased the real property for $3,132.12, but based on the judgment obtained by American General in New York State Supreme Court, Delaware County ("State Court") in 2003.

[2] The hearing on confirmation of the Debtor's Plan was originally scheduled for October 7, 2008, and was adjourned to November 4, 2008, given the adjournment of the § 341 meeting of creditors to October 15, 2008. On October 31, 2008, Mark Swimelar, Esq, the chapter 13 trustee ("Trustee") indicated that the Debtor had requested a further adjournment to December 2, 2008 to resolve the Trustee's feasibility objection (Dkt. Nos. 13 and 14). In the interim, by letter dated November 26, 2008, American General requested another adjournment in order to have an opportunity to submit objections to the Debtor's Plan given the Debtor's failure to provide it with notice of the case.

2009 and ultimately, on November 29, 2009, the Court signed an Order to that effect.[3] [4]

At the hearing, the Court requested that the parties submit memoranda of law on the issue of the timeliness of American General's objection to the Debtor's claim of a homestead exemption set forth in its objection to confirmation of the Debtor's Plan since resolution of the issue would

---

[3] In the interim, the Debtor filed a letter, dated September 14, 2009 (Dkt. No. 96), apparently continuing to take exception to the Court's June 2009 Decision. In the letter, the Debtor cites to *In re Birney*, 200 F.3d 225 (4th Cir. 1999) for the proposition that "[d]uring the period following [the debtor's] discharge on January of 1996, no lien could attach to the property because the discharge extinguished the debt upon which the lien was based." *Id.* at 227. While the Debtor did obtain a discharge in a prior bankruptcy case on September 19, 2006, the statement in *Birney* is taken out of context and is inapplicable to the matter herein. In that case, the creditor had a money judgment against only the debtor. However, the property was held as tenants by the entireties and as long as the debtor's wife was alive, the creditor's judgment could not ripen into a lien on the real property to satisfy the husband/debtor's debts. In this case, American General's lien is against both the Debtor and his wife and the argument provides no basis for the Court to reconsider its June 2009 Decision.

[4] Thereafter, in his memorandum of law, filed on October 2, 2009 (Dkt. No. 99), the Debtor, relying on the case of *In re Midland Bank-Central v. Gleason*, 62 A.D.2d 429 (N.Y.A.D. 4th Dept. 1978), *aff'd,* 47 N.Y.2d 758 (N.Y. 1979), for the first time argues that American General's lien was extinguished on June 15, 2008, sixty days after the issuance of an execution to levy on April 15, 2008, pursuant to New York Civil Practice Law and Rules ("CPLR") § 5230(c), entitled "Executions." *See* Debtor's Memorandum of Law at 3-4. However, the court in *Gleason* states that "the lifetime of an execution is 60 days in the case of property capable of delivery and 90 days in the case of property not capable of delivery (CPLR 5230, 5232)." *Id.* at 431. CPLR § 5232 addresses "Levy upon personal property." In *Gleason*, the court was dealing with an alleged security interest in fixtures and articles of personalty. The instant case deals with real property, which is not capable of delivery, and the Court finds that the *Gleason* case has no relevancy to the matter previously decided by it despite the Debtor's characterization as the Premises being his "personal property" or "personal real property."*See* Footnote 1 of Debtor's "Notice to Withdraw the Homestead Property pursuant to Federal Rule Bankruptcy Procedure 4003(b)," filed September 4, 2009 ("Withdrawal Notice"). As observed by one authority, "a judgment creditor's delivery of an execution to a sheriff secures for that creditor a lien on the judgment debtor's personal property. That lien is lost when the execution is returned unsatisfied. * * * The 60-day limitation on return of the execution must also be deemed inapplicable when real property is being levied. The time required for a real property sale under CPLR § 5236 goes well beyond 60 days." *See* David D. Siegel, NEW YORK PRACTICE § 501 (4th ed. 2009) (emphasis supplied). Accordingly, the Court again finds no basis for it to reconsider its June 2009 Decision in which it concluded that American General has a valid judicial lien against the Premises despite the Debtor's renewed efforts to convince the Court otherwise.

impact on not only American General's lien but also on the Plan. The Court adjourned the matters, including confirmation of the Debtor's Plan, to November 5, 2009, for control purposes and indicated on that date that it would consider the issue of timeliness of American General's objection to the Debtor's homestead exemption on submission.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(B), (L) and (O).

## FACTS

The Debtor filed a voluntary petition ("Petition") pursuant to chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code") on August 4, 2008. On Schedule A, Debtor listed real property located at 23 Railroad Avenue, Stamford, New York (the "Premises"), which he identified as his "homestead" with a value of $124,000. He also notes that any secured claim on the Premises was "discharged." On Schedule C, he claimed a homestead exemption of $100,000 for himself and his non-debtor spouse, Libertad Quintana.

As noted in this Court's June 2009 Decision, American General commenced an action on a promissory note in State Court in 2003 (Delaware County Index No. 2003-83) after its mortgage on the Premises had been extinguished. In that action, there was a decision and order signed by the Hon. Michael V. Coccoma ("Justice Coccoma"), New York State Acting Supreme Court Justice, on July 9, 2003, which was entered on July 11, 2003, in favor of American General, granting it

summary judgment.  On August 4, 2003, a judgment for $59,410.71 was entered in favor of American General ("State Court Judgment").  *See* Exhibit "B", attached to American General's Supplemental Opposition, filed May 12, 2009 (Dkt. No. 80).

In 2004 Debtor filed his first petition pursuant to chapter 13 in this Court (Case No. 04-62929).  The Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge for the Northern District of New York, signed an Order on June 14, 2004 in that case denying the Debtor's motion seeking to vacate the State Court Judgment.  Judge Gerling also denied Debtor's motion for reconsideration of the June 14th Order on September 20, 2004.  Debtor made a similar motion to vacate the State Court Judgment in the case after it was transferred to the U.S. Bankruptcy Court for the Northern District of Texas (Case No. 05-42417) ("Northern District of Texas Case").  His motion was denied with prejudice on January 9, 2006 by the Honorable D. Michael Lynn, U.S. Bankruptcy Judge for the Northern District of Texas, (Dkt. No. 67 in the Northern District of Texas Case) as was the request by the Debtor for reconsideration on January 24, 2006 (Dkt. No. 72 in the Northern District of Texas Case).  On April 25, 2006, the District Court dismissed the Debtor's appeal for failure to prosecute (Dkt. No. 126 in the Northern District of Texas Case).  Ultimately, the Debtor's appeal of the District Court's decision was denied with prejudice by the Fifth Circuit Court of Appeals on November 14, 2006 (Dkt. No. 167 in the Northern District of Texas Case).

In the interim, the Debtor filed an objection to the claim of American General (Dkt. No. 102 in the Northern District of Texas Case), which was denied on May 18, 2006.  The Debtor filed a motion to reconsider the May 18th Order, which was withdrawn on July 19, 2006 (Dkt. No. 146 in Northern District of Texas Case).  American General thereafter sought clarification and allowance of its claim on August 11, 2006. By Memorandum Opinion, signed September 12, 2006, Judge Lynn held that American General continued to have a valid lien on the Premises (Dkt. No. 153 in

the Northern District of Texas Case). Judge Lynn pointed out that the Debtor's objection to American General's claim had "no effect on the validity or enforceability of American General's judgment lien."[5] The District Court denied the Debtor's request for leave to appeal on October 4, 2006 (Dkt. No. 164 in the Northern District of Texas Case). The Debtor filed a Notice of Appeal with the Fifth Circuit on October 24, 2006 (Dkt. No. 166 in the Northern District of Texas Case.). On September 14, 2007, the Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court, which was "Issued as Mandate" on October 24, 2007, and entered on the District Court docket on February 8, 2008, as modified to add the appellate case number and court type (Dkt. No. 229 in the Nothern District of Texas Case).

In the petition, filed in 2004, Debtor listed American General as an unsecured creditor with a disputed claim of $59,410.71 based on the State Court Judgment. *See* Schedule F (Case No. 04-62929). However, the Debtor did not list American General as a creditor in the case currently pending in this Court, apparently based on his belief that any debt had been discharged on September 19, 2006 in his Northern District of Texas Case. However, on November 17, 2008, he filed amended schedules adding Morequity, Inc. as an unsecured creditor with a notation of "prior discharged account." In his amended plan, filed on November 21, 2008 (Dkt. No. 16), he lists "Morequity, Inc. Original Creditor American General" and references a fraudulent proof of claim. On December 1, 2008, the Debtor filed another amended plan (the "Plan") (Dkt. No. 19) in which he indicates an intent to avoid the lien of Morequity/American General pursuant to Code § 522(f). Both amended plans were served on Morequity but not on American General despite the fact that

---

[5] American General did not file a proof of claim in the Northern District of Texas Case. Judge Lynn expressed the belief that the Debtor was under the mistaken impression that his claim objection effectively would eliminate American General's judgment lien. *See* September 12, 2006 Memorandum Opinion at 4.

on November 25, 2009, American General had filed a Notice of Appearance, c/o Deutsch & Schneider in Glendale, New York, in which it identifies itself as a secured creditor. (Dkt. No. 18).

The initial meeting of creditors pursuant to Code § 341 was held on October 7, 2008, and was concluded on October 15, 2008. The deadline for filing proofs of claims was December 16, 2008, which was the day on which American General filed its proof of claim in the amount of $134,238.61, with $86,248.05, identified as secured and $47,990.56, identified as unsecured (Claim No. 6). The basis for the claim is listed as "Mortgage Note/Loan" and indicates that "Debtor may have scheduled [the] account as Morequity, Inc." (¶ 3(a) of the Proof of claim). The proof of claim indicates that the basis for it being "secured" is a "judgment lien against 23 Railroad Ave., Stamford, New York."

As mentioned previously, by letter dated November 26, 2008, American General requested that the hearing on confirmation of the Debtor's Plan be adjourned from December 2, 2008, in order for it to have an opportunity to file objections to the Plan. On January 30, 2009, American General filed an objection to confirmation of the Plan (Dkt. No. 42). In its objection, American General, noting that it had never been served with a copy of the Plan, raised questions about the validity of the Debtor's claim of a homestead exemption of $100,000 based on questions of occupancy of the Premises by the Debtor and the assertion that under New York law, the Debtor was only entitled to claim an exemption of $50,000. Presently, under consideration is the issue of whether or not American General's objection to the Debtor's homestead exemption was timely under the circumstances, as well as the issue of whether American General's proof of claim (Claim No. 6) should be expunged.

**ARGUMENTS**

American General contends that its right to object to the Debtor's claim of a homestead exemption has not expired given the fact that the Debtor failed to list it in his schedules as a creditor, thereby preventing it from receiving notice of the case. American General points out, even after it learned of the case and filed a Notice of Appearance, the Debtor failed to serve it with a copy of his Plan. In the alternative, American General argues that should the Court determine that its objection to the Debtor's homestead exemption was not timely, then it requests that it be permitted pursuant to Code § 105 to object to the exemption.

The Debtor relies on *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-45 (1992) for the proposition that unless a party in interest timely objects to the property claimed as exempt, the claim of exemption is valid. Debtor takes the position that the Premises are no longer property of the bankruptcy estate even if his claim of exemption was improper. His position is further reflected in the fact that subsequent to the hearing on August 6, 2009, the Debtor filed the Withdrawal Notice (Dkt. 93) in which he contends that the Premises are no longer property of the estate as of December 17, 2008, the last day he argues for filing objections to his claim of exemption.[6] In addition, the Debtor contends that American General has not established excusable neglect for its failure to timely object to the Debtor's claim of a homestead exemption. In support of this argument, Debtor relies

---

[6] The Withdrawal Notice has no legal or binding effect in the view of this Court. If, as the Debtor contends, the Premises are no longer property of his estate, American General's lien remains enforceable against the Premises unless and until the Debtor is able to avoid it pursuant to Code § 522(f). *See Ferry v. Sanderfoot*, 500 U.S. 291, 297 (1991); 11 U.S.C. § 522(c)(2).

on *In re Feuerborn*, 87 B.R. 173 (Bankr. D. Kan. 1988) in which the court found that the trustee had failed to establish excusable neglect for his failure to timely object to the debtor's amended claim of exemption in certain tax refunds. Accordingly, the court denied the trustee's objection and granted the debtor's exemption.

In addition, the Debtor takes the position that Morequity is the real party in interest and that it was afforded proper notice of the case. In this regard, the Debtor argues that "the sole issue before us is whether a loan service[r] is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of American General relating to the debt that it services . . . ." (*see* Debtor's Opposition to American General Home Equity, Inc.'s Memorandum of Law at 6 (Dkt. No. 99), citing *Greer v. O'Dell (In re O'Dell)*, 305 F.3d 1297 (11th Cir. 2002). Relying on Rule 17(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), the Debtor contends that it is Morequity that has the "clear and practical stake in the Quintanas' bankruptcy proceedings which warranted responding to the Debtors' objection to the claim," and that it was Morequity that should have filed a proof of claim on behalf of American General under the alleged servicing agreement between the two. *Id.* at 6.

**DISCUSSION**

I.  Debtor's Objection to American General's Proof of Claim (Claim No. 6)

In its June 2009 Decision, this Court indicated that it still needed to consider the Debtor's argument that American General's claim should be disallowed based on allegations of fraud and misrepresentation. As the Court's determination impacts on the issue of American General's standing to object to the Debtor's homestead exemption, it must initially consider the Debtor's

objection to its proof of claim filed on December 16, 3008 (Claim No. 6).

In this regard, the Court has reviewed the various pleadings and documents filed by the Debtor, namely Docket Nos. 62, 70, 81 and 82, as well as American General's proof of claim. Claim No. 6 identifies American General as a creditor and lists a claim of $134,238.61, of which $86,248.05 is asserted to be secured and $47,990.56 to be unsecured. It also states that the secured claim is based on a judgment lien against 23 Railroad Avenue, Stamford, New York. Attached to the proof of claim is a "Statement of Computations" and reference to Loan Account No. 844106 and the fact that a judgment had been docketed against the subject Premises. The "Statement of Computations" shows a "principal balance" of $59,410.71 and interest from July 28, 2003 to August 4, 2008 of $26,837.34 at 9%. The "Statement of Computations" also identifies as unsecured, *inter alia,* advances towards property taxes of $11,690.94 and legal fees of $27,143.02. Attached to the proof of claim is a copy of the Note, dated January 7, 1997, on which American General had commenced an action in State Court in 2003 and a copy of the State Court Judgment entered on August 4, 2003, in the amount of $59,410,71.

In objecting to American General's proof of claim, the Debtor has asserted a number of arguments. In particular, he contends that the proof of claim is fraudulent because American General's claim "was only a[n] *in personam* claim discharge[d] by a[n] Order signed September 19, 2006 by the United States Bankruptcy Court for the Northern District of Texas." *See* Docket No. 82 at ¶ 1 and ¶ 11. The Court agrees that the Debtor's personal liability in connection with his obligation under the Note and ensuing State Court Judgment was discharged in the Northern District of Texas Case. However, as determined in the Court's June 2009 Decision, American General still has a valid lien on the Premises. *See* June 2009 Decision at 8, citing *Johnson v. Home State Bank*, 501 U.S. 78, 80, 82-83 (1991). Admittedly, the court in *Johnson* was concerned with the

enforceability of a mortgage lien following the chapter 7 debtor's discharge. However, a claim which is based on a judicial lien stemming from an action on a promissory note is no less an "enforceable obligation." As noted by the court in *Johnson,* "a bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - while leaving intact another - namely, an action against the debtor *in rem.*" *Id.* at 84. Thus, there is nothing fraudulent about American General filing a proof of claim to give notice of its interest in the Premises.

Debtor also relies on an Order of the Honorable Leif M. Clark, United States Bankruptcy Judge for the Western District of Texas, signed on December 29, 2008, in Libertad Quintana's case (Case No. 08-51040). According to the Debtor, Judge Clark denied Morequity's objection to the confirmation of Mrs. Quintana's chapter 13 plan. Upon careful review of the docket in Mrs. Quintana's case, it appears that Morequity asserted a security interest in the Premises based on an assignment by American General of its mortgage, which, as discussed above, had been extinguished in 2002 upon the tax sale of the Premises back to the Debtors.[7] According to the Debtor, Morequity's filing of the proof of claim in his wife's case[8] and Morequity's subsequent objection

---

[7] By letter, dated May 21, 2009, addressed to the Debtor, counsel for Morequity, Monica Morales, explained that Morequity, after having filed a motion for relief from the automatic stay in Mrs. Quintana's case, had determined that "Morequity did not buy the actual judgment lien from American General. Morequity purchased the original note held by American General which was no longer valid because of the [tax] foreclosure that extinguished the note in or around 2003. Morequity acknowledge that it had purchased "worthless paper" from American General and had attached the same "worthless paper" to its proof of claim. *Id.* After the hearing on December 16, 2008, before Judge Clark, "Morequity conceded this fact and so the Motion was found to be Moot. . . . Finally, in 5/19/2009 Morequity withdrew their claim in its entirety." *See* Exhibit L, attached to Debtor's Supplemental Reply, filed May 27, 2009 (Dkt. No. 82) in connection with the Debtor's objection to Claim No. 6.

[8] Morequity had filed a proof of claim in Mrs. Quintana's case in the Western District of Texas on May 5, 2008. Attached to the proof of claim was not only the Note, dated January 7, 1997, but also a copy of the mortgage executed on the same date by the Quintanas, which as noted above

to her plan, were determined to be fraudulent by Judge Clark in his Order of December 29, 2008. Therefore and according to the Debtor, the proof of claim filed by American General in this case and its subsequent objection to his Plan is also fraudulent based on *res judicata*. *See* Debtor's Objection to American General's Claim (Docket No. 62) at ¶ 7 and ¶ 15(e). According to the Debtor, American General's "filing fraudulent proof of claims in different bankruptcy case[s] for the same account was a bad faith act to steal property and money from innocents Chapter 13 debtors." *Id.* at ¶ 26. However, as noted previously, this court had determined that American General has a valid lien and, further, that in Mrs. Quintana's case, Morequity withdrew its proof of claim when it discovered that the documents supporting it were no longer valid.

As an initial matter, the Court notes that the Order, signed December 29, 2008 by Judge Clark (Dkt. No. 107 in Case No. 08-51040), was stricken by a subsequent order signed by Judge Clark on February 18, 2009 (Dkt. No. 132). According to yet another order, signed by Judge Clark on February 20, 2009 (Dkt. No. 135), the original order (Dkt. No. 107) filed by Mr. Quintana was "mistakenly signed and docketed" and, therefore, vacated. The original order, was further "vacated" and "all motions attempting to enforce that order" were denied by an order, signed February 27, 2009 (Dkt. No. 146). Because the order of December 29, 2008, was clearly vacated, any arguments that the Debtor has made in reliance on that order are without merit.[9]

---

had been extinguished in 2002. Also attached to the proof of claim was a copy of an assignment of the mortgage to Morequity, which includes a notation that "it is an assignment within the secondary mortgage market." A question arose in Mrs. Quintana's case about Morequity's standing to seek relief from the automatic stay and to object to her plan given the fact that the mortgage no longer existed. Ultimately, on May 19, 2009, Morequity withdrew its proof of claim in Mrs. Quintana's case.

[9] On July 14, 2009, the Debtor appeared before Judge Clark seeking clarification of a prior order denying his request for sanctions against Morequity. This Court has reviewed the record of that hearing and finds that Judge Clark unequivocally stated that he had not made any finding of fraud on the part of Morequity. Instead, he indicated that Morequity had been well within its rights

The proof of claim filed by American General in this Court is based on the State Court Judgment against the Debtor and his wife on the note, not on the original mortgage. The Court finds nothing fraudulent in filing a proof of claim in this case to reflect American General's interest in the Premises, despite the fact that it has no claim against the Debtor with respect to his personal liability on the note, which was discharged in the Northern District of Texas Case. American General still retains a "right to payment" or a "claim" against property of the estate, namely, the Premises. Accordingly, the Court finds no basis to expunge American General's claim to the extent that it has its basis *in rem.* This conclusion also supports a finding by the Court that American General has standing to object to the Debtor's Plan.

However, the Court would be remiss if it were not also to address the objection raised by Debtor as regards the amounts identified in American General's proof of claim as "unsecured" totaling $47,990.56. *See* Debtor's Objection to American General's Claim (Dkt. No. 62) at ¶ 31-32. These include not only "advances towards property taxes" and "legal fee and disbursements"[10] as alluded to earlier but also include amounts labeled as "escrow deposit," "inspections" and "misc conversion." Given the fact that American General claim is based on the State Court Judgment, which ultimately imposed a judgment lien on the Premises, the Court questions the legal basis for

---

to try to enforce the mortgage that it mistakenly believed it held on the Premises owned by the Debtor and his wife in her chapter 13 case in the Western District of Texas.

[10] According to the State Court Judgment, the issue of attorney's fees was to be determined at an inquest scheduled for August 8, 2003. In support of his objection to American General's claim, the Debtor references a decision and order signed by Justice Coccoma on September 3, 2003, which denied American General's attorney's fees. *See* Debtor's Objection to American General's Claim  (Dkt. No. 62) at ¶ 2. The Court was unable to locate a copy of that decision on its docket; however, it was provided with a copy by the Delaware County Clerk's Office. Said Decision and Order (Index No. 2003-083, RJI No. 2003-0170), signed on September 3, 2003, and entered on the docket on September 5, 2003, denied American General's request for $3,110.50 in attorney's fees based on the record before Justice Coccoma at the time of the hearing.

that portion of its proof of claim identified as "unsecured." "Escrow deposits" and "Inspections," as well as "Legal fees" are most commonly provided for as contract rights set forth in a mortgage document. However, in this case American General's mortgage was extinguished in 2002. Also, because the Debtor obtained a discharge in the Northern District of Texas Case, any entitlement to an unsecured claim would have had to have arisen after September 19, 2006. Accordingly, unless American General intends to amend its proof of claim, the Court will require American General to provide the Court and the Debtor with an accounting and with the legal basis for what is identified as the "unsecured" portion of its claim in the amount of $47,990.56.

## II. Timeliness of American General's Objection to Debtor's Homestead Exemption

Fed.R.Bankr.P. 4003(b)(1) allows for the filing of an objection to a claim of exemption within 30 days after the meeting of creditors was concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The latter assumes notice to any creditors added to the schedules.

The § 341 meeting was concluded on October 15, 2008. American General was not listed in the Debtor's schedules filed on August 4, 2008. Debtor amended his schedules on November 17, 2008, to add Morequity as a creditor and added it to the mailing matrix with a notation that the original creditor was "American General Home Equity, Inc. (Transfer by Assignment)." (*See* Schedules F and H of Dkt. No. 15). There is no indication that Morequity was ever served with a copy of the amended schedules as Debtor did not file a certificate of service. However, on November 28, 2008, the Debtor did serve Morequity at a post office address in Evansville, Indiana, with notice of his Plan as the alleged actual owner of Claim No. 6 (Dkt. No. 19). He did not serve American General or its attorneys in spite of its Notice of Appearance, filed on November 25, 2008

pursuant to Fed.R.Bankr.P. 9010(b), requiring that Deutsch & Schneider, LLP be served with all notices and papers referred to in Fed.R.Bankr.P. 2002, including the Debtor's Plan, as well as notices of any orders, pleadings, motions, etc.

The Plan provides that "This Plan will be Avoid Liens Under 11 U.S.C. § 522(f)." It further states that "Debtor will be Moves to Avoid the following Liens that Impair Exemptions." Debtor identifies CPLR § 5206(a)(1) as the basis for his claimed exemption and identifies Morequity, Inc. as the creditor whose lien he intends to avoid. *See* ¶ 3 of the Plan at page 3 (Dkt. No. 19).

The Debtor's failure to serve his amended schedules on Morequity and his failure to serve the Plan on American General or its counsel after its Notice of Appearance had been filed raise concerns for the Court in determining the timeliness of American General's objection to the Debtor's homestead exemption. Debtor contends that Morequity is the actual owner of what he asserts is a fraudulent claim given that it was discharged in the Northern District of Texas Case. *See* Debtor's Objection to American General's Claim (Dkt. No. 62).

The Court agrees that the discharge order in the Northern District of Texas Case extinguished the Debtor's personal liability on the debt. However, as was noted by Judge Lynn in his decision signed September 12, 2006, even though American General might not have a right to receive payments under the Debtor's plan, it was still entitled to pursue its collateral under state law "though, of course, the discharge will protect Debtor from further personal liability on AGHE's judgment." *See* Judge Lynn's Decision of September 12, 2006, at 7 (Dkt. No. 153 in the Northern District of Texas Case) and Dkt. No. 43-7 herein). For the Debtor to now assert that Morequity is the proper party in these proceedings is disingenuous given Judge Lynn's statement regarding the rights of American General, and his admonition that he would consider any efforts by the Debtor to pursue the invalidation of American General's judgment lien further, other than through his

pending appeal at the time, to be presumptively in violation of Fed.R.Bankr.P. 9011.

As noted previously, in taking the position that it is Morequity that is the real party in interest, the Debtor relies on *Greer v. O'Dell (In re O'Dell)*, 305 F.3d 1297 (11th Cir. 2002). In that case, the debtors had scheduled the unsecured claim of MBNA America. However, it was Max Flow Corporation that filed a proof of claim on behalf of MBNA America Bank (as noted on the proof of claim). The debtors objected to the proof of claim on the ground that Max Flow was not a party in interest. Max Flow responded by indicating that it was an agent of MBNA. The parties did not dispute that MBNA was an unsecured creditor of the debtors, and it was conceded that Max Flow was merely an agent or servicing agent for MBNA. The debtors objected to the proof of claim based on their assertion that an account servicing agent had filed it, rather than the actual creditor card issuer. Max Flow admitted that it did not own the claim at issue and had no claim against the debtors except in its agency status. The bankruptcy court held that because Max Flow did not possess a claim in the bankruptcy case, the proof of claim should be disallowed. The Court of Appeals reversed the lower court's decision and concluded that Max Flow, as a mortgage servicer, was a party in interest "entitled to defend the claim on behalf of MBNA and to take all required action to protect its interests and those of MBNA." *Id.* at 1303.

Debtor goes on to argue that even if considered merely the servicer, Morequity was a party in interest entitled to defend the claim on behalf of American General and, thus, Debtor's service on Morequity was proper and Morequity had full notice of the bankruptcy proceeding. However, nothing in *O'Dell* supports the Debtor's contention that Morequity is the actual owner of Claim No. 6.

It is clear in *O'Dell*, that as the actual creditor, it had been listed in the debtors' schedules and had received notice of the case. Even assuming that Morequity is an agent of American

General, this does not relieve the Debtor from serving American General as the judgment creditor holding a valid lien on the Premises or from serving Deutsch & Schneider, LLP, once it filed its Notice of Appearance.

In *In re Arts Des Provinces De France, Inc.*, 153 B.R. 144 (Bankr. S.D.N.Y 1993), the counsel for the debtor's former landlord filed a Notice of Appearance on September 25, 1992. A bar date was originally set for March 15, 1993, which was later amended to March 5, 1993 by order, dated February 8, 1993. The debtor failed to serve a copy of the order on either the former landlord or its counsel apprizing it of the change to an earlier date, despite the Notice of Appearance. In the meantime, the order of February 8, 1993, was sent to the landlord's leasing agent and received by it on or about February 19, 1993. It was forwarded to the landlord's controller, who ultimately forwarded it to the landlord's attorneys on or about March 2 or March 3, 1993 and received by them on March 5, 1993, the new bar date.

The court in determining whether the landlord's proof of claim, which was filed on March 11, 1993, was timely noted fault on both sides. For example, the debtor had listed the landlord's leasing agent, rather than the landlord, as the creditor, and had failed to comply with the Notice of Appearance to serve the landlord's attorneys. On the other hand, the landlord had received notice of the actual bar date from its leasing agent in time to file a timely proof of claim but mailed the notice to its attorneys too late for them to comply with the bar date.

Ultimately the court found that despite the landlord and its agents being neglectful in filing the proof of claim six days after the bar date, the conduct was excusable because the delay could have been avoided if the debtors had complied with bankruptcy procedure by properly listing the landlord as a creditor and serving notice of the bar date on the landlord's counsel, as required by their Notice of Appearance. Accordingly, the court found the proof of claim to have been filed in

a timely fashion.

In the matter presently under consideration, the Debtor failed to list American General as a creditor under the belief that the debt had been discharged. However, he then ignored the Notice of Appearance filed on behalf of American General on November 25, 2008, contending that Morequity is the real party in interest and should be the one asserting the claim and objecting to the Debtor's Plan pursuant to Fed.R.Civ.P. 17(a), as incorporated in Fed.R.Bankr.P. 7017 and made applicable to contested matters pursuant to Fed.R.Bankr.P. 9014(c) to contested matters. As this Court has found, it is American General that has a valid judgment lien against the Premises, not Morequity. The fact that Morequity may have asserted a claim against the Premises in Mrs. Quintana's case based on what it has since recognized to be an invalid mortgage does not alter the Court's view. There has been no proof submitted by the Debtor to indicate an assignment of the judgment lien by American General to Morequity. All that has been presented is a copy of the assignment to Morequity of the original note and mortgage dated January 7, 1997. Accordingly, the Court finds no merit in the Debtor's assertion the Morequity is the real party in interest based on a review of the facts in this case.

Just as in *Arts Des Provinces* where the court found fault on both sides, this Court could well find similar fault on the part of both the Debtor and American General and conclude that American General's delay in objecting to the Debtor's homestead exemption was excusable and could have been avoided had the Debtor complied with the Notice of Appearance. Arguably, American General would have had an opportunity to file a timely objection to the exemption, instead of including it in its objection to the Plan, had it received timely and proper notice in this case. However, the Court is of the opinion that it need not make a finding that American General's objection was timely under the circumstances because the Debtor has actually "reopened the door" by means of his proposed

Plan in which he seeks to avoid American General's judgment lien pursuant to Code § 522(f). In order to carry out that provision in his Plan, the Debtor is required to file a motion. Fed.R.Bankr.P. 4003(d) states that "[a] proceeding by the debtor to avoid a lien . . . under § 522(f) of the Code shall be by motion in accordance with Rule 9014. Notwithstanding the provisions of subdivision (b), a creditor may object to a motion filed under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien." *See In re Armenakis*, 406 B.R. 589, 614 n.35 (Bankr. S.D.N.Y. 2009) (commenting that "[i]t would be inequitable to require lienholders to adhere to the Rule 4003(b) FRBP timetable in order to defend their rights when debtors seek relief under § 522(f) and Rule 4003(d) FRBP are subject to no such timetable"); *In re Jarski*, 301 B.R. 342, 345-46 (Bankr. D. Ariz. 2003); *In re Patterson*, 275 B.R. 578, 583-84 (Bankr. D.Colo. 2002); *In re Morgan*, 149 B.R. 147, 152-53 (9th Cir. BAP 1993). American General should have the opportunity to object to the exemption in the context of such a motion or plan provision. Whether or not the Court were to find that American General's objection to the homestead exemption was timely, American General is still entitled to raise as a defense its objection to the exemption in connection with the Debtor intent to avoid its lien, as provided for in his Plan. Indeed, it appears in the Debtor's letter of September 14, 2009 (Dkt. No. 96), that he is requesting that the Court schedule an evidentiary hearing to address the same.

Based on the foregoing, it is hereby

ORDERED that the Debtor's objections to American General's proof of claim based on allegations of fraud, are denied; it is further

ORDERED that American General either amend its proof of claim to delete any reference to an "unsecured" portion or provide the Debtor and the Court with an accounting and with a legal basis for that portion of its claim; it is further

ORDERED that an evidentiary hearing be scheduled for February 26, 2010 at 9:00 a.m. to address the provision in the Debtor's Plan seeking to avoid American General's lien.[11]

**IT IS SO ORDERED**

Dated at Utica, New York
this 15th day of December 2009

                                        /s/ Diane Davis
                                        DIANE DAVIS
                                        U.S. Bankruptcy Judge

---

[11] Although Fed.R.Bankr.P. 4003(d) states that a motion seeking to avoid a lien pursuant to Code § 522(f) be presented to the Court by way of a motion, the Court is of the opinion that the parties have been provided with sufficient notice of the Debtor's intent in this regard to form a basis for scheduling an evidentiary hearing in the interest of judicial economy and a finding that neither party will be prejudiced in this regard.